| UNITED STATES BANKRUPTCY COURT | 13-3589448 |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------

In Re:                                       **Chapter 7**

       **SONG PARK,**                           **Case No. 11-40745-CEC**

               Debtor.

-----------------------------------------------------------

**TRUSTEE'S AFFIRMATION IN OPPOSITION TO DEBTOR'S MOTION TO:
(1) QUASH SUBPOENA ISSUED ON JUNE 14, 2011 BY TRUSTEE ROBERT L. GELTZER UNDER AN EX PARTE MOTION FILED ON JUNE 14, 2011 PURSUANT TO BANKRUPTCY RULE 2004 (C); (2) IMPOSE ATTORNEY'S FEES FOR THE TRUSTEE'S CONDUCT AND/OR SUCH ORDER OR FURTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER UNDER FED. R. CIV.P. 45(C)(1); (3) ORDER *SUA SPONTE* THE RECUSAL OF TRUSTEE GELTZER AS TRUSTEE IN THE PRESENT CASE AND APPOINT ANOTHER TRUSTEE PURSUANT TO 11 U.S.C. § 324(a) OR ALLOW COUNSEL TO WITHDRAW AS ATTORNEY; (4) STAY THIS MATTER UNTIL AN INDEPENDENT AND UNBIASED EXAMINATION OF THE RECORD MAY BE MADE BY THE OFFICE OF THE UNITED STATES TRUSTEE, THIS COURT, OR BOTH; AND (5) GRANT SUCH OTHER AND FURTHER RELIEF THAT THIS COURT MAY DEEM JUST AND PROPER**

TO:    THE HONORABLE CARLA E. CRAIG,
        <u>CHIEF UNITED STATES BANKRUPTCY JUDGE</u>:

       I am an attorney duly admitted to practice before all the Courts of the State of New York and the Federal District Court and Bankruptcy Courts in the Southern and Eastern Districts of New York, and affirm under penalty of perjury the following to be true based on my information and belief:

**BACKGROUND**

       1. On or about February 1, 2011 (the "Filing Date"), Song Park (the "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court.

       2.      On or about February 1, 2011, I was appointed by the Office of the United States Trustee as interim trustee of the Debtor's estate pursuant to § 701, and pursuant to § 702(d) of the United States Bankruptcy Code thereafter became permanent trustee by operation of law (the "Trustee").

       3.      This is to reply to, and to oppose, Debtor's motion: (1) to Quash

Subpoena Issued on June 14, 2011 by Trustee Robert L. Geltzer Under an Ex Parte Motion Filed on June 14, 2011 Pursuant to Bankruptcy Rule 2004 (C); and (2) to Impose Attorney's Fees for the Trustee's Conduct and/or Such Order or Further Relief as this Court May Deem Just and Proper under Fed. R. CIV.P. 45(c)(1); and (3) to Order *Sua Sponte* the Recusal of Trustee Geltzer as Trustee in the Present Case and Appoint Another Trustee Pursuant to 11 U.S.C. § 324(a) or Allow Counsel to Withdraw as Attorney; and (4) to Stay this Matter Until an Independent and Unbiased Examination of the Record May Be Made by the Office of the United States Trustee, this Court, or Both; and (5) to Grant Such Other and Further Relief that this Court May Deem Just and Proper (the "Motion").

        4.        As set out in my April 8, 2011 letter to Naresh M. Gehi, Esq. ("Gehi"), counsel to the Debtor, not only has he attempted to frustrate - - but not successfully - - my administration of the Debtor's estate, he has arrogated to himself the role of the trustee in the administration of the Debtor's estate. A copy of said letter is annexed hereto as Exhibit "A."

        5.        Pursuant to the Court's Notice of Commencement, the §341(a) meeting was scheduled for March 8, 2011 at 9:00 a.m (the "341 Meeting").

        6.        While it is true, that there was an error made in my office regarding the receipt of the Debtor's petition and schedules prior to the 341 Meeting, I, nevertheless, conducted the meeting; however, it was adjourned inasmuch as there were numerous missing documents concerning the Debtor's business and that of her father's, doing the same or similar business proximate to that of the Debtor, and those documents concerning a $250,000 transaction between the Debtor and Ji Sun Li.[1]

        7.        Notwithstanding the above, Gehi, filed a complaint against me, which complaint he withdrew (but now seeks to resurrect in his Motion), alleging, among other things, that I was "flinging binder clips across the room" - - which was a complete fabrication on his

---

[1] Upon information and belief, the Debtor and/or Yongdae Park paid a portion of this debt and, thus, there is $150,000 owed to Ji Sun Li (See Debtor's Schedule F).

2

part. However, he is correct to the limited extent that I did ask the Debtor to leave the §341(a) meeting room inasmuch as she was speaking during the examination of her father, Yongdae Park (Case No. 11-40747).[2] Her actions were totally inappropriate and disrupted the examination of Yongdae Park.

8. Further, I did in fact ask Gehi for the Debtor's personal "books and records" and those regarding the Debtor's business; indeed, by agreement with the Office of the United States Trustee, his time to provide the Debtor's "books and records" was generously extended to June 1, 2011, although they became estate property on the Filing Date and should have been available to me then; by June 1, 2011 all that he provided were those documents set out in Exhibit A of my Bankruptcy Rule 2004 application (the "Application"), and even to date, he has not turned over all "books and records," or, for that matter, anything else. That scenario prompted - - indeed, required - - my Application - - which application Gehi suggested I make in his April 8, 2011 letter to me: "If you think that my clients are hiding any assets, please feel free to comply with the Bankruptcy Code and I respectfully urge you to bring the facts to this Hon. Court." A copy of his letter is annexed hereto as Exhibit "B."

9. Gehi's ignorance as to the meaning of "books and records," (see ¶9, ¶11, ¶13, ¶14, ¶16 of the Motion, as well as Exhibit "B") which indeed was explained to him by Assistant United States Trustee, Alicia Leonhard, Esq., is shocking, especially as Gehi claims to be an experienced bankruptcy attorney. It is not the role of the trustee to guess as to what specific documents he may need in the administration of a debtor's estate. Section 521(a)(4) of the Bankruptcy Code provides that:

> the debtor shall - if a trustee is serving in the case...surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to the property of the estate, whether or not immunity is granted under section 344 of this title.

---

[2] Albeit Gehi has amended the caption of his Motion, Gehi is treating the Debtor's case and Yongdae Park's case as jointly administered cases. That is misleading and legally incorrect inasmuch as there has not been any order entered by this Court authorizing the joint administration of these estates.

3

Moreover, 18 U.S.C. § 152(9) provides that:

> a person who... after the filing of a case under title 11, knowingly and fraudulently withholds from a custodian, trustee, marshal, or other officer of the court or a United States Trustee entitled to its possession, any recorded information (including books, documents, records and papers) relating to the property or financial affairs of a debtor, shall be fined..., imprisoned..., or both.

10. Gehi alleges in the Motion that the Debtor was pressured into purchasing the business. . . . and was involved in a scheme to do so (see ¶4 of the Motion). Moreover, in his April 8, 2011 letter to me, Gehi states that:

> My clients had purchased the business from Ji Sung [sic] Li who has actually defrauded my clients. In other words, my clients have been victims of fraud from the Purchasers of the Business and I request you to review the facts and circumstances of the case and do justice to all parties including creditors in this matter. (See Exhibit "B")

That is just what I want to do: "review the facts," if only Gehi would not continue to frustrate those efforts.

Indeed, given the severity of the implication made by Gehi and the Debtor, absent the production of the Debtor's books and records, and the Debtor's examination in connection therewith, I cannot fully discharge my duties as Trustee of the Debtor's estate for the benefit of creditors. It seems to me that by concealing the Debtor's books and records the Debtor may be complicit in a scheme with Ji Sun Li.[3]

***Bankruptcy Rule 2004 Application***

11. The role of a chapter 7 trustee is to "investigate the debtor's affairs to discover and recover assets for the benefit of creditors of the debtor." *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). As this Court is well aware, Bankruptcy Rule 2004 provides for inquiries ranging broadly over any "acts, conduct, or property [of the debtor] or to the liabilities and financial condition of the debtor, or any matter which may affect the administration of the debtor's estate. . . . Fed. R. Bankr. P. 2004(b). The scope of the inquiry

---

[3]Upon information and belief, the Debtor's father, Yongdae Park, obtained loans from two (2) financial institutions in the total amount of $100,000 to pay this purported debt owed to Ji Sun Li.

permitted is so broad that it can "legitimately be in the nature of a fishing expedition." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). *See also*, *Johns-Manville, Corp.,* 42 B.R. 362 364 (S.D.N.Y. 1984) citing *In re Mantolesky*, 14 B.R. 973, 976 (Bankr. D. Mass 1981) (The examination taken may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him.") *In re Bakalis*, 199 B.R. 443 337 (Bankr. E.D.N.Y. 1996) (same).

12. Further, Bankruptcy Rule 2004 may be used to determine whether the debtor has a viable claim for relief against a third party. *See Ionosphere Clubs, Inc.* 156 B.R. 414, 432 (S.D.N.Y. 1993) *aff'd*, 17 F.3d 600 (2d Cir. 1994).

13. The information that I seek concerns not only the Debtor's "acts, conduct, or property" or "liability and financial condition," but also relates to the to possible fraudulent transfer claims against Ji Sun Li and/or others who may have received assets of the Debtor without fair consideration.

14. Further, the Document request is not overly broad in that it encompasses a period of six years prior to the filing of the petition (<u>or the life of the Debtor's wholly owned business, SP Puppy Love, Inc., if less than six (6) years</u>), so that it can be determined, under federal and state law, whether any fraudulent transfers have occurred. It is well established law that a Bankruptcy Rule 2004 examination, especially one conducted by the trustee of the given debtor can be extremely broad; indeed, it can be a "fishing expedition" although that is not the case here in that the Application is, as stated, well grounded in the investigation of fraudulent conveyances.

15. Notwithstanding the eminently clear request in my Application that I am seeking documents for the life of the Debtor's business, if less than six (6) years, Gehi refuses to acknowledge that in the Motion. Instead, he repeatedly states that I am seeking documents for a six (6) year period (<u>See</u> ¶20, ¶23 and ¶29 of the Motion).

16. Moreover, another misrepresentation by Gehi in the Motion (See ¶16

5

and ¶27 of the Motion) is that I have failed to provide a list of documents which I seek and those which have been previously produced. Annexed to my Application, and marked as Exhibit A, is a chart showing documents received -- and documents missing -- for various periods from various financial institutions, and businesses, and tax returns, etc.

17. Further, what is significantly troublesome is the Debtor's failure to produce even one document in connection with the transaction with Ji Sun Li. Additionally, if, as the Debtor and Gehi allege, Ji Sun Li defrauded the Debtor, the question arises as to why the Debtor did not commence a pre-petition legal action against Ji Sun Li? Also, why did the Debtor's father, Yongdae Park, assume the same liability when he opened his business?

18. With respect to Debtor's specious claim that my Application is "oppressive, overreaching, and used to harass Debtors in bad faith," as set out above, there are significant issues raised in connection with the Debtor's petition and schedules, as well as her inability to produce documents in connection with the transaction with Ji Sun Li.

19. Yet, he states that his clients want an investigation of this case: "My clients have literally lost everything and are ready for a full investigation in connection with the bonafides of this case." (See Exhibit "B"). That is exactly what I set out to do by my Application.

20. As set out above, my Application is supported by law and the facts in the instant case and, accordingly, I respectfully request that this Court enter an order granting my Application, and deny Gehi's request for attorney's fees.

***Gehi's Request that this Court Order Sua Sponte
my Removal as Trustee in the Debtor's Case***

21. While Gehi accurately cites the statutory and legal authority for removing a trustee, the facts of this case do not, in any sense, support removal and, furthermore, Gehi has failed to apply the applicable law to the facts. "It is clear that removal of a trustee is an extreme remedy even where a trustee has acted negligently." *In re Cee Jay Discount Stores, Inc.* 171 B.R. 173, 175 (Bankr. E.D.N.Y. 1994). No negligence is present here;

6

indeed, because seeking the Bankruptcy Rule 2004 order is my duty, not to have done so might be negligent.

22. The Debtor cannot meet the heavy burden to remove me as Chapter 7 Trustee. In the case *In re Reagan*, 403 B.R. 614 (8th Cir. BAP 2009), the Court states, at page 623, when analyzing 11 U.S.C. §324 and the term "cause" for removal:

> "'Cause' is not a defined term, but removal is an extreme remedy and some courts have construed it to require the moving party to prove actual injury or fraud." (See *Reagan* at p.623).

Other than inconvenience in complying with the law, the Debtor has suffered no injustice, and has not, and cannot, allege any fraud.

23. Some circuits even require clear and convincing evidence to be established, rather than just a mere preponderance of the evidence to remove a trustee. *See In re Walker*, 2004 Bankr. LEXIS 2187 (Bankr S.D. Fla. Dec. 1, 2004) *aff'd Walden v. Walker* (*In re Walker*), 515 F.3d 1204 (11th Cir. Fla 2008).

24. The following pertinent statement appears in *In re Alexander*, 289 B.R. 711, 714 (8th Cir. BAP 2003):

> Pursuant to 11 U.S.C. §324(a), the bankruptcy court may remove a trustee for cause. As the movant, the Debtor bears the burden of establishing cause by setting forth specific facts which support removal of the trustee. In re Marvel Entm't Group, Inc., 140 F.3d 463, 471 (3rd Cir. 1998); *In re Shulz Mfg. Fabricating Co.*, 956 F.2d 686, 62 (7th cir. 1992). A conclusory contention unsupported by specific facts does not constitute sufficient grounds for the removal of a trustee. *In re Schultz Mfg.*, 956 F.2d at 692.

25. In paragraph 32 of the Motion, Gehi states the following:

> It is well settled that a trustee has the fiduciary obligations of diligence, accountability, competence, information disclosure, candor, civility, proper litigation preparation and conduct, and impartiality.

Gehi further makes the conclusory statement that I have failed to comply with my duties of diligence, competence, information disclosure, and candor in the administration of this estate and, thus, I should be removed. However, nothing can be further from the truth. It is not my fault that Gehi does not know the meaning of the term "books and records." Moreover, it is not my

7

fault that Gehi does not know that the Debtor has an obligation under § 521(a)(4) of the Bankruptcy Code to surrender the books and records to me.  Further, my Application attached a specific list of documents produced by the Debtor and those missing - - but Gehi refuses to acknowledge the existence of said list - - and refuses to produce any documents in connection with transaction with Ji Sun Li.  Yet, Gehi demands that I conduct a "full investigation" and make the appropriate application before this Court, as I have done.  Indeed, creditors might have cause to complain had I not sought the Bankruptcy Rule 2004 order.

26. Additionally, I have not engaged in threatening and/or harassing behavior against the Debtor and/or his counsel.  What was a misunderstanding at the 341 Meeting regarding the initial submission of the Debtor's petition and schedules to me, has become a shield for Gehi to attempt to block every request made by me for the turnover of the Debtor's books and records, and a sword to harass me.   Despite what Gehi implies, the Debtor has not cooperated with me in the administration of the Debtor's estate.  Absent the production of those documents including, but not limited to, documents in connection with the transaction with Ji Sun Li, I cannot administer the Debtor's estate for the benefit of creditors, which Gehi and the Debtor implored me to do (See paragraph 10 above).

27. Until I receive those documents and investigate the circumstances surrounding the transaction with Ji Sun Li, this matter cannot be resolved because, to do so, would be a disservice to creditors.  I have conveyed this to Gehi several times, as has the Office of the United States Trustee; however, his client has refused to provide those documents.  Instead, he requests that this Court grant a stay pending an independent review of this case by either or both the United States Trustee and this Court, but has failed to cite the statutory basis for such a request.

28. In short, Gehi requests: (a)  that I conduct a "full investigation" regarding the Ji Sun Li transaction, but does not want his client to produce documents; (b) that I apply for the appropriate order pursuant to the Bankruptcy Code to conduct my investigation, as I have done, but he opposes said Application, and wants me removed as Trustee; and (c) that the

8

Office of the United States Trustee and the Court stay proceedings to review this case, which proceedings, on one hand, he implores me to undertake - - and, on the other hand, opposes. Indeed, it seems that creditors' interests would be better served were the Court to deny Gehi's Motion, and permit me, as Trustee, to administer the case.

29. The only unnecessary motion practice in this case is Gehi's Motion, which in turn is in violation of the New York Standards of Civility for the Legal Profession, adopted by this Court through Your Honor's Administrative Order No. 568.

30. I can only exhort Gehi, who apparently has embarked on a personal vendetta against me by filing his feckless Motion, replete with misrepresentations, in an attempt to thwart my administration of the Debtor's estate, to heed Shakespeare in "Julius Caesar" Act I, Sc. 2, l. 135, who makes the point that the fault may not be in the stars, but in thyself.

31. I further respectfully invite the Court neither to countenance nor to condone this type of harassment of a trustee, who merely seeks to do his job. An appropriate message needs to be sent so that trustees do not become targets if they do not file a no-asset report but, instead, demand documents so that they can discharge their duty.

**WHEREFORE**, the Trustee respectfully requests that Gehi's Motion be denied in its entirety.

Dated: New York, New York
       July 6, 2011

Respectfully Submitted,

/s/ Robert L. Geltzer
Robert L. Geltzer (RG 4656)
Chapter 7 Trustee
1556 Third Avenue, Suite 505
New York, New York 10128
(212) 410-0100

9