U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

--------------------------------------------------------------x

IN RE

SONG PARK

Debtor.

--------------------------------------------------------------x

REPLY TO OPPOSITION TO
MOTION TO QUASH

:
:
:  Chapter 7 Case No.
:
:  1-11-40745-cec
:
:
:
:
:

## REPLY TO TRUSTEE'S AFFIRMATION IN OPPOSITION TO DEBTOR'S MOTION

## TO QUASH TRUSTEE'S RULE 2004 SUBPOENA

1.     In response to Trustee Robert L. Geltzer's (hereinafter, "Trustee Geltzer") affirmation in

opposition to Debtor's Motion to Quash Trustee's Subpoena to Conduct a Rule 2004

Examination (hereinafter, "Trustee's Affirmation"), Debtor Song Park ("Debtor"),

though undersigned counsel, respectfully submits this reply brief.

**I.     Trustee's Affirmation fails to address the adequacy of the records which the Debtor
has already provided for a thorough investigation.**

2.     As discussed in Debtor's Memorandum of Law filed on May 5, 2011, (see Ex. A, Mem.

of Law for Song Park) a debtor does not need to justify a failure to maintain detailed

business books and records unless a creditor or trustee shows that this failure has made it

impossible to ascertain the debtor's true financial condition.  See In re Yerushalmi, 393

B.R. 288, 297 (Bankr. E.D.N.Y. 2008); see also In re DeRise, 394 B.R. 677, 688 (Bankr.

E.D.N.Y. 2008); In re Moreo, No. 07-71258-dte, 2008 Bankr. LEXIS 3252 at *8 (Bankr.

E.D.N.Y. Dec 1, 2008).  In determining whether the 2004 Examination is necessary and

proper and does not purposefully cause an undue burden or cost on the debtor, an

1

explanation by Trustee Geltzer on the adequacy of the records provided so far is relevant to determine whether Trustee Geltzer's Rule 2004 subpoena is proper.

3.     However, Debtor's Motion to Quash listed every record which was already given to Trustee Geltzer. The Trustee's Affirmation, nevertheless, failed to address the adequacy of the records given to him. While Trustee's Affirmation also reiterates with great conviction that he gave us a list of records he needed (see ¶¶ 5, 6 of Trustee's Affirmation), the only list he ever gave the Debtor was the list attached to the Rule 2004 subpoena. Debtor's Motion to Quash, however, refers to Trustee Geltzer's failure to provide a list to Debtor prior to the issuance of the Rule 2004 Subpoena, despite the many efforts of Debtor to seek a list. As explained in the Motion to Quash, Trustee Geltzer's inappropriate conduct against Debtor made any efforts to cooperate with him impossible. Any attempt at clarifying the records or information needed for the investigation was met with hostility and condescension.

**II.     Trustee's Affirmation also fails to address Debtor's lack of financial sophistication, education, experience, and personal difficulties, which justify the absence of business books and records.**

4.     A thorough explanation for Debtor's lack of thorough and robust documentation for her business was provided to this Court and the Trustee through a Memorandum of Law filed with this Court on May 5, 2011. (Ex. A.) The memorandum and accompanying affidavit detailed Debtor's education, experiences, and knowledge when she purchased the business, the difficulties she faced while operating it, and her lack of a fraudulent intent. All of these factors are relevant for determining the adequacy of her records and the necessity of a 2004 Examination.

**III.     Trustee Geltzer's Affirmation misrepresents to the Court the information already provided to him regarding the debt to Ji Sun Li.**

5.   While Trustee Geltzer purports to have filed the June 14 Motion for a Rule 2004 Examination, mainly out of concern over the debt paid to Ji Sun Li (see Trustee's Affirmation ¶¶ 17, 18), his subpoena went far beyond any information regarding that specific issue. Moreover, Trustee's Affirmation fails to address or respond to any of the explanations of the $150,000 loan, which were already provided to him through the affidavit Debtor that was annexed to the memorandum of law filed with this Court on May 5, 2011 and is annexed to this reply as Exhibit A.

6.   Further, Trustee Geltzer had ample opportunity to question the Debtor and her father, Yongdae Park, concerning the debt owed to Ji Sun Li and the circumstances surrounding that debt at the first and second § 341 meetings of the creditors, which he neglected to do. Trustee's Affirmation also implies that the Debtor failed to disclose the records and the circumstances surrounding the $150,000 loan to Ji Sun Li even though the Debtor listed Ji Sun Li as a creditor in the original petition and provided her contact information. (Ex. B, Schedule F.) Debtor also provided the business contract between Ji Sun Li's business, J.S. Puppy Land, Inc, and S.P. Puppy Love, Inc. with copies of the checks paid to J.S. Puppy Love attached to the contract (Ex. C, Contract with J.S. Puppy Land), and a mortgage table calculator results for the $150,000 loan (Ex. D, Mortgage Table Results). Debtor has been unable to obtain documentation other than what was already given to Trustee Geltzer regarding this loan, but is still actively working to get any further documentation from the attorney who closed the initial contract.

7.   In addition, Trustee Geltzer suggests that the Debtor's failure to initiate an action against Ji Sun Li somehow implies that she is complicit with Ji Sun Li. (See Trustee's Affirmation, ¶ 10.) It appears that Trustee Geltzer needs yet another reminder of the

precarious financial and emotional condition of the Debtor. She is presently unable to afford rent and has had to move in with her boyfriend along with her father. She had also recently given birth, was suicidal, and is in the middle of an unnecessarily stressful and contentious bankruptcy proceeding. (See Ex. A.) We again invite Trustee Geltzer to contact Ji Sun Li for further information and to subpoena her directly or her bank for her records on this matter.

IV. **Trustee Geltzer's Affirmation fails to respond to the incidents of inappropriate conduct that warrant his recusal from this case.**

8. The statute governing the removal of a Trustee only requires showing cause for the removal and leaves it up to the Courts to determine what qualifies as cause. See In re Lundborg, 110 B.R. 106 (Bankr. D. Conn. 1990) ("Cause, which is not defined by [§ 324(a) of] the Code, must be determined by courts on an ad hoc basis."). While it is true that the Debtor does not make any allegations of fraud or extreme negligence regarding this case, Courts recognize that it is in the best interest of the United States Bankruptcy Court to protect the integrity of proceedings from even a suggestion of impropriety or bias so as to properly protect the rights and interests of the creditors. See In re Mason, 12 B.R. 318, 319 (Bankr. D. Nev. 1981) ("The Court and the trustees in bankruptcy must be above suspicion. . . . The trustee in this case and the integrity of the United States Bankruptcy Court must be protected from any prejudiced suggestion of impropriety"); see also In the matter of Freeport Italian Bakery, Inc., 340 F.2d 50, 55 (2d Cir. 1987) ("If the administration of estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change in administration, the removal of the trustee is necessarily the better solution"); In re Savoia Macaroni Mfg. Co., 4 F.Supp. 626, 627 (E.D.N.Y. 1933) (court removed trustee rather than delay the

4

administration of the estate by a lengthy inquiry in charges made against and by trustee where the charges at least had "some substance in fact"); In re Baker, 38 B.R. 705, 708-709 (Bankr. D. MD. 1983) (rejecting appeal to remove a trustee because no showing of a desire to combat an unwarranted inference of an improper motive as was the case in In re Mason, 12 B.R. at 319)).

9. Trustee Geltzer's conduct throughout the present proceeding has been marked with such impropriety and bias that it would be improper to allow Trustee Geltzer to remain as the Trustee administering this case. In order to preserve the integrity of these proceedings, it is necessary for this Court to use its discretion in removing Trustee Geltzer. To ensure that both the creditors and the debtors receive a full and fair administration of this case, it is in the best interest the parties that this Court appoint a new Trustee.

10. Finally, in response to Trustee's Affirmation urging the Court not to "condone this type of harassment" (see Trustee's Affirmation ¶ 31), Debtor respectfully points out that it has been Trustee Geltzer's behavior and conduct toward Debtor that has brought forth this action. Shouting at Debtor, throwing Debtor out of the room crying, and calling Debtor's counsel "stupid" on the record in front of a room full of people including the Debtor, her father, and Alicia Leonard from the United States Trustee's Office is far from appropriate behavior and should not be condoned by this Court. Undersigned counsel has never suffered from such harassment and conduct from any other trustee. (See Ex. E, Affirmation of Naresh M. Gehi, Esq.) Nor has counsel ever sought to remove a Trustee from a proceeding before today; and while it is an extreme remedy, it is one that is necessary and appropriate. Further, it should be noted that after the first § 341 meeting of the creditors, undersigned counsel has been suffering similar problems with Trustee

Geltzer in other cases, where he subjects them to unduly burdensome discovery. Therefore counsel respectfully requests that Trustee Geltzer be removed from administering those cases as well under 11 U.S.C. § 324(b)[1], which allows this Court to use its discretion in removing a trustee from other cases once the Court has chosen to remove the trustee under 11 U.S.C. § 324(a).

Respectfully submitted,

Dated July 11, 2011                    By: /s/_____

                                       LAW OFFICES OF N.M GEHI, P.C.
                                       Naresh M. Gehi, Esq.
                                       118-21 Queens Blvd., Suite 411
                                       Forest Hills, N.Y. 11375
                                       Telephone: 718-263-5999
                                       Counsel to Debtor Song Park

---

[1] "Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise."

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

**HEARING DATE: July 14, 2011**
**HEARING TIME: 2:00 p.m.**

-----------------------------------------------------------x

**AFFIDAVIT OF SERVICE**

IN RE                                                    :
                                                         :
**SONG PARK**                                            :    **Chapter 7 Case Nos.**
                                                         :
                                                         :    **1-11-40745-cec**
                                                         :
**Debtors.**                                             :
                                                         :
-----------------------------------------------------------x

I, _____Naresh Gehi_____, certify that I have served a copy of the attached Reply to Trustee's Affirmation in Opposition to Debtor's Motion to Quash Trustee's Rule 2004 Subpoena by mailing it via Federal Express Overnight to the Law Offices of Robert L. Geltzer, whose address is 1556 Third Avenue, New York, New York 10128, and upon the Office of the United States Trustee, whose address is the U.S. Department of Justice, U.S. Trustee Program, 33 Whitehall Street, Suite 2100, New York, New York 10004.


Dated: July 11, 2011
Forest Hills, New York

                          I declare that the statement above is true to
                          the best of my information, knowledge and
                          belief.

                          X_____

Notary_____

                          NARESH MENGHRAJ GEHI
                          Notary Public, State of New York
                          No. 02GE6063117
                          Qualified in Nassau County
                          Commission Expires August 27, 2013

EXHIBIT A

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE | : |
| | : |
| **SONG PARK AND YONGDAE PARK** | : **Chapter 7 Case Nos.** |
| | : |
| | : **1-11-40745-cec, 1-11-40747-cec** |
| | : |
| **Debtors.** | : |
| | : **(Jointly Administered)** |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEBTOR SONG PARK'S MEMORANDUM OF LAW


LAW OFFICES OF N.M. GEHI, P.C.
Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999

Counsel to Debtor Song Park

# FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2011 (the "**Petition Date**"), debtor Song Park ("**Ms. Park**") commenced a voluntary case under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**"). On the same day, Ms. Park's father, debtor Yongdae Park, also commenced a voluntary Chapter 7 action.

As sworn to by Ms. Park in her attached affidavit, the events leading to this action began when Ms. Park purchased a pet grooming business in June 2006. See Exhibit A, Affidavit of Song Park, at paragraph 4. The business was called SP Puppy Love, Inc. Ms. Park was twenty-five years old when she purchased the business and had never bought or managed a business prior to that time. See id. at 5-6. The person who sold the business to Ms. Park was Ji-Sun Lee ("**Ms. Lee**"), who pressured her to purchase the business despite the fact that Ms. Park lacked the financial means to do so. See id. Ms. Lee insisted that Ms. Park buy the business, and Ms. Lee devised a scheme for Ms. Park to secure the financing. See id. The scheme involved making Ms. Park's parents officers of Ms. Lee's own separate business, JS Puppy Land, Inc., and leading them to apply for loans from HSBC, Washington Mutual, and TD Bank. See id.

Ms. Park operated the business to the best of her ability and showed a profit of $973.00 in 2007. See id. at 8. However, she was unable to keep up with the monthly payments owed to Ms. Lee and was only able to make minimum payments toward her father's loans from HSBC and Washington Mutual. See id. at 7. In 2008, Ms. Park incurred losses and her business shut down. See id. at 8.

Ms. Park became so distraught over her inability to pay the debts that she attempted to commit suicide. See id. at 8. Mr. Park leased a different office space and incorporated a new business, called Parks Doggi Mama, Inc. It has been operating since 2009, although with great

difficulty. See id. at 9. Despite Mr. Park's best efforts, his business failed to generate enough revenue to make the payments owed to Ms. Lee, HSBC, and Washington Mutual. See id. at 9. As a result, Ms. Park and Mr. Park felt forced to file for bankruptcy.

A section 341 meeting of creditors was held on March 8, 2011. At that meeting, Trustee Robert L. Geltzer ("**Trustee Geltzer**") requested additional documents from Ms. Park and Mr. Park, and granted them additional time to submit these documents. However, Trustee Geltzer failed to clarify which specific additional documents were required. He did not provide to Ms. Park a complete list of the needed documents. On April 8, 2011, Trustee Geltzer sent Ms. Park's counsel a letter requesting books and records for the business. On April 11, 2011 Ms. Park filed a motion for an extension of time to submit documents. On April 12, 2011, a second section 341 meeting was held. At this meeting, Ms. Park received another extension of time to submit documents.

Ms. Park is now providing a detailed affidavit regarding her business. See Exhibit A. She has requested bank statements and copies of cancelled checks from HSBC for the entire period that she was operating the business with an account at that bank. See id. at 12. However, Ms. Park cannot afford the fees that the banks are imposing for issuance of these statements. See id. at 11.


## ARGUMENT

**I.  MS. PARK'S INABILITY TO PROVIDE COMPREHENSIVE BOOKS AND RECORDS FOR HER BUSINESS SHOULD NOT BAR HER FROM RECEIVING A DISCHARGE.**

Ms. Park should not be barred from receiving a discharge on account of her inability to produce detailed books and records of her business. A debtor may be granted a discharge even if

she cannot produce books and records of her business, if she can demonstrate that her lack of books and records is justified. In re Yerushalmi, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008). To determine whether a debtor's lack of books and records is justified, courts evaluate whether the absence of records is reasonable given the debtor's particular circumstances. In re Underhill, 82 F.2d 258, 259-60 (2d Cir. 1936); Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992). It is a "loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved." Morris Plan Indus. Bank of N.Y. v. Dreher, 144 F.2d 60, 61 (2d Cir. 1944). As discussed below, the education, experiences, and knowledge Ms. Park had when she purchased the business, the difficulties she faced while operating it, and her lack of a fraudulent intent justify the absence of books and records for her business.

### A. MS. PARK'S LACK OF FINANCIAL SOPHISTICATION JUSTIFIES THE ABSENCE OF BUSINESS BOOKS AND RECORDS

In evaluating whether the absence of books and records is justified, key factors to consider are the debtor's education, experience, and sophistication. See In re Moreo, No. 07-71258-dte, 2008 Bankr. LEXIS 3252 (Bankr. E.D.N.Y. Dec. 1, 2008); In re DeRise, 394 B.R. 677, 688 (Bankr. E.D.N.Y. 2008) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992). To determine a debtor's level of sophistication, courts have considered the debtor's education and knowledge of business affairs. In re Smorto, No. 07-CV-2727 (JFB), 2008 U.S. Dist. LEXIS 19235 (E.D.N.Y. Mar. 12, 2008). In Moreo, the court refused to deny a debtor a discharge for failing to produce books and records for her bagel shop because the debtor only had a high school education, lacked an understanding of proper business accounting, and had no experience apart from working at the shop before she purchased it. 2008 Bankr. LEXIS 3252 at

*8. Like the debtor in In re Moreo, when she bought the business, Ms. Park had never owned or operated a business before, and she had no business experience. See Exhibit A at 6. Thus, she is an unsophisticated debtor and it is reasonable that she would not know how to maintain detailed business books and records.

### B. MS. PARK'S PERSONAL DIFFICULTIES JUSTIFY THE ABSENCE OF BUSINESS BOOKS AND RECORDS

Ms. Park's personal difficulties also justify her inability to produce books and records. In re DeRise, 394 B.R. at 688-89; see also In re Benningfield, 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989) (finding that medical problems arising from an auto accident justified the debtor's failure to maintain records). In In re DeRise, the court found that a debtor's failure to produce accurate business records was reasonable because she was embroiled in a protracted divorce proceeding and was frustrated over her husband's failure to pay child support on a regular basis. 394 B.R. at 688-89. Here, at the time Ms. Park's business was failing, she became so distraught that she attempted suicide. See Exhibit A at 8. A person who is suffering such severe depression as to make her suicidal cannot reasonably be expected to maintain adequate business records.

### C. MS. PARK'S LACK OF FRAUDULENT INTENT JUSTIFIES THE ABSENCE OF BUSINESS BOOKS AND RECORDS

Ms. Park's inability to maintain comprehensive books and records of her business should not bar her discharge because she was not motivated by an intent to defraud her creditors. Failure to produce business books and records only requires a denial of discharge where the failure results from the debtor's intent to defraud her creditors. Moreo, 2008 Bankr. LEXIS at *8. Case

law clearly establishes that a debtor's lack of sophistication tends to "negate the existence of fraudulent intent." Id. (quoting Smorto, 2008 U.S. Dist. LEXIS at *13-15); see also In re Olshan, 312 B.R. 476, 488 (Bankr. E.D.N.Y. 2004). Here, Ms. Park's failure to maintain books and records resulted from her lack of financial sophistication and business experience, not from fraudulent intent. See Exhibit A at 6-7.

## II. TRUSTEE GELTZER SHOULD CONSIDER ALL THE DOCUMENTS AND TESTIMONY PRODUCED BY MS. PARK TO ASSESS THE ADEQUACY OF HER RECORDS.

Courts have repeatedly held that a debtor need not justify failure to maintain detailed business books and records unless the creditor or trustee shows that this failure has made it impossible to ascertain the debtor's true financial condition. Yerushalmi, 393 B.R. at 297; DeRise, 394 B.R. at 688; Moreo, 2008 Bankr. LEXIS at *8. To evaluate whether the debtor's financial condition can be ascertained and whether a debtor's inability to produce books and records is justified, courts typically consider all records produced by the debtor, and the debtor's testimony. See DeRise, 394 B.R. at 688-89 (Denial of discharge refused because "[I]nconsistencies, omissions, or misrepresentations between [the debtor's] complete Schedules and her SOFA were largely reconciled by her testimony at the November 2006 trial and an integrated reading of her bankruptcy papers"). Courts have refused a denial of discharge where the trustee is able to proceed with the bankruptcy by evaluating the documents produced. See, e.g. DeRise, 394 B.R. at 684. In light of the approach preferred by the courts, Trustee Geltzer has an obligation to consider Ms. Park's testimony, Mr. Park's testimony and all the documents they have produced to determine whether the information provided will enable the continuation of the bankruptcy process.

Ms. Park has made every effort to cooperate with Trustee Geltzer. She appeared at both Section 341 meetings. She provided Trustee Geltzer with documents including a copy of her certificate of counseling, copies of her business tax returns since she began operating the business, HSBC bank statements, and her affidavit of self-employment. She is now providing an affidavit which describes how she purchased the business and discusses its financial status during the years that she operated it. See Exhibit A. She has requested more bank statements and copies of cancelled checks from HSBC for the entire period that she was operating the business, but she cannot afford to pay the fees charged for these documents. See Exhibit A at 11-12; see also Exhibit B, Letter from HSBC. As Ms. Park is an unsophisticated debtor who cannot reasonably have been expected to maintain comprehensive books and records, Trustee Geltzer should evaluate the information she has provided to determine whether it is sufficient to allow him to proceed with the bankruptcy.

## CONCLUSION

For all the foregoing reasons, Debtor Song Park's inability to produce detailed business books and records should not bar her from receiving a discharge.

LAW OFFICES OF N.M. GEHI, P.C.
Naresh M. Gehi, Esq.
118-21 Queens Blvd., Suite 411
Forest Hills, N.Y. 11375
Telephone: 718-263-5999

Counsel to Debtor Song Park

# EXHIBIT A

**U.S. BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**IN RE**                                              :
                                                       :
**SONG PARK AND YONGDAE PARK**         :    **Chapter 7 Case Nos.**
                                                       :
                                                       :    **1-11-40745-cec, 1-11-40747-cec**
                                                       :
**Debtors.**                                     :
                                                       :    **(Jointly Administered)**
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SONG PARK

I, Song Park, duly sworn, depose and state under the penalty of perjury:

1.  I am a debtor in chapter 7 case number 1-11-40745.

2.  There have been two section 341 meetings in my chapter 7 case, one on March 8, 2011 and the second on April 12, 2011.

3.  I am submitting this affidavit to provide supporting details regarding the business I used to own, called SP Puppy Love, Inc.

4.  In June 2006 a business called JS Puppy Land, Inc. transferred its pet supplies, grooming business inventory, and stock to my business, SP Puppy Love, Inc. The president and sole owner of JS Puppy Land, Inc. was Ms. Ji-Sun Lee. The purchase price was $250,000.00.

5.  At the closing, my father Yong Dae Park and my mother Soon Kong Park made two separate payments, one for $40,000.00 in cash and another for $60,000.00 by check. Both payments were made to Ji-Sun Lee as a representative for JS Puppy Land, Inc.

6.  I was only 25 years old at the time and had never bought a business or had enough funds to purchase a business, and Ji-Sun Lee pressured our family into a plan to obtain the finances. Ms. Lee pressured my father to become an officer of JS Puppy Land so that he could obtain bank loans under the name of JS Puppy Land and then use the loan money to develop SP Puppy Love. In addition, Ji-Sun Lee pressured my mother to become an officer of JS Puppy

Land in order to obtain a $50,000.00 loan from TD Bank for the development of SP Puppy Love. My whole family felt forced into this arrangement by Ji-Sun Lee, and we believed that there was nothing else we could do.

7.  The purchase agreement provides for an owner mortgage in the amount of $150,000.00 that SP Puppy Love would owe to JS Puppy Land. My parents and I ensured that monthly payments were made to Ji-Sun Lee as a representative of JS Puppy Land. I worked long hours and tried to continue monthly payments to Ji-Sun Lee in the amount of $3,500.00 in accordance with the agreement. After the first year, I was not able to keep up with the monthly payments of $3,500.00 to Ji-Sun Lee. I started making reduced monthly payments of $500.00 to her for another year. Additionally, during that same year I made minimum monthly payments to HSBC and Washington Mutual to help pay off the loans that my father had obtained. My mother used money she had received through my grandmother's will to pay off the $50,000.00 TD Bank loan.

8.  I tried my very best to run SP Puppy Love, and in the first year I made a small profit of $973.00. However in the second year, July 1, 2007 through June 30, 2008, I started incurring serious losses and had a negative income of $481.00. From July 1, 2008 through September 2008, when the business stopped operating, there was a net income of negative $544.00. As a result of this, I was unable to continue running the business. I was so distraught that I tried to commit suicide due to the pressure and the losses I was sustaining.

9.  Since I closed down the business, the owner of the business next door to the mine, a veterinarian, was very sad to witness my unfortunate situation. He offered to sublet his office space to my father, and my father began operating a pet grooming business in that space. Upon the advice of an accountant, my father incorporated his business. The corporation is called Parks Doggi Mama, Inc. It was incorporated in September 2009 and continues to operate currently, although with difficulty. This is one reason that my father is also a chapter 7 debtor at this time.

10. Our entire family has lost a great deal in our attempts to keep our businesses afloat.

11. At this stage, my parents and I cannot even afford to pay rent for an apartment, and we are being helped by my boyfriend Douglas Gray, who has been extremely kind to accommodate us during the worst financial time of our lives.

12. In accordance with the request of the bankruptcy trustee, I have tried to obtain as many documents as possible in reference to the finances of the businesses. I have requested bank statements and copies of cancelled checks regarding the entire duration of SP Puppy Love, but I cannot afford to pay the fees that would be charged to obtain all these documents. SP Puppy Love had a business bank account at HSBC, and HSBC has given me a letter stating that there is a fee for each check copy and an additional hourly charge. The letter is attached. An HSBC representative told me in person that the total cost would likely exceed $1000. I cannot afford to pay this amount. However I have provided to the bankruptcy trustee the bank statements and accounting records that I have been able to afford.

As demonstrated above, I am offering everything I can provide in response to the Trustee's request.

Respectfully,

Sworn to before me this 21st day of April, 2011.

_____
Song Park

_____
Notary Public

NARESH MENGHRAJ GEHI
Notary Public, State of New York
No. 02GE6063117
Qualified in Nassau County
Commission Expires August 27, 2013

# EXHIBIT B



SP PUPPY LOVE INC
4510 Parsons Blvd
Flushing, NY 11355

Apr. 27, 2011

Dear Miss Park,

I wrote to let you know that your checking account statement copies for 3 years would be $180 - $5 per each statement.
If you need all of your check copies it will be $5 per each copy of the check and there will be an hourly service charge in addition to check copy fees.
The hourly charge cannot be determined now because we do not know how long it will take for the job done.

If you have any questions, please call me at 718-762-8891.

Thank you for banking with HSBC.

Sincerely,

Alice J Choi
Business Banking Specialist

# EXHIBIT B

In re **Song Park** _____,    Case No. __**1-11-40745**_____

                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. 520381421000<br><br>**1st Data**<br>**4000 Coral Ridge Drive**<br>**Coral Springs, FL 33065** | - | | | | Opened 5/01/07 Last Active 8/01/08<br>**Lease** | | | | 2,277.00 |
| Account No. 528072<br><br>**Asset Management Servi (Original Cr**<br>**6851 Jericho Tpke Ste 25**<br>**Syosset, NY 11791** | - | | | | Opened 9/15/08<br>**Collection Radiology Associates-Queens** | | | | 290.00 |
| Account No. 5583<br><br>**Bank Of America**<br>**Po Box 17054**<br>**Wilmington, DE 19850** | - | | | | Opened 11/25/06 Last Active 2/01/08<br>**CreditCard** | | | | 6,157.00 |
| Account No. 15526225100701102<br><br>**Cach, Llc (Original Creditor:Direct**<br>**370 17th Street, Suite 5000**<br>**Denver, CO 80202** | - | | | | Opened 7/16/10 Last Active 11/01/10<br>**Collection Direct Capital** | | | | 10,479.00 |
| __2__ continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | 19,203.00 |

In re  **Song Park**                                    Case No.  **1-11-40745**
_____,
                                    Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. 426684107616 | | | | | Opened 12/16/05 Last Active 8/01/09 CreditCard | | | | |
| Chase Po Box 15298 Wilmington, DE 19850 | | - | | | | | | | 708.00 |
| Account No. 2723547 | | | | | Opened 11/06/09 Last Active 12/01/09 Collection 10 At T Mobility | | | | |
| Collection (Original Creditor:10 At 700 Longwater Driv Norwell, MA 02061 | | - | | | | | | | 241.00 |
| Account No. 521531883758 | | | | | Opened 12/01/04 Last Active 1/01/08 CreditCard | | | | |
| Hsbc Bank Po Box 5253 Carol Stream, IL 60197 | | - | | | | | | | 1,540.00 |
| Account No. J.S Puppy land | | | | | Owner Mortgage Loan for business | | | | |
| Ji Sun Lee 2980 Blackstock drive Cumming, GA 30041 | | - | | | | | | | 150,000.00 |
| Account No. 7575273752329 | | | | | Opened 11/30/09 Last Active 7/01/07 FactoringCompanyAccount Citibank Shel Consumer | | | | |
| Lvnv Funding Llc (Original Creditor Po Box 740281 Houston, TX 77274 | | - | | | | | | | 807.00 |

Sheet no. **1** of **2** sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)     153,296.00

In re **Song Park**                                     Case No. **1-11-40745**

_____

Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | J C | | | | | |
| Account No. 98565450<br><br>**National Credit Syst (Original Cred**<br>**117 E 24th St- 5th Fl**<br>**New York, NY 10010** | - | | | | Opened 8/01/08 Last Active 12/01/08<br>Collection Long Island Vet | | | | 2,016.00 |
| Account No. 5141275<br><br>**Paul Michael Marketing (Original Cr**<br>**18609 Union Tpke**<br>**Flushing, NY 11366** | - | | | | Opened 7/08/08 Last Active 10/01/08<br>Collection Shiel Medical Labs | | | | 120.00 |
| Account No. 5119777<br><br>**Paul Michael Marketing (Original Cr**<br>**18609 Union Tpke**<br>**Flushing, NY 11366** | - | | | | Opened 6/12/08 Last Active 9/01/08<br>Collection Shiel Medical Labs | | | | 73.00 |
| Account No. 273752329<br><br>**Shell/Citi**<br>**Po Box 6497**<br>**Sioux Falls, SD 57117** | - | | | | Opened 5/20/06 Last Active 10/28/07<br>CreditCard | | | | 684.00 |
| Account No. 26503623<br><br>**Sst/Cigpf1co**<br>**4315 Pickett Road**<br>**Saint Joseph, MO 64503** | - | | | | Opened 12/01/06 Last Active 7/01/08<br>BusinessCreditCard | | | | 1,289.00 |

Sheet no. __2__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal<br>(Total of this page) | | 4,182.00 |
| Total<br>(Report on Summary of Schedules) | | 176,681.00 |

# EXHIBIT C

AGREEMENT, made the        day of June,  2006, in the State of New York between        JS Puppy Land, Inc.

whose address is        45-10 Parsons Blvd.
Flushing, NY 11355
hereinafter called the Transferor, and

~~Yong Dae Park~~ SP Puppy Love, Inc.

whose address is        36-25 Parsons Blvd.
Flushing, NY 11354

hereinafter called the Transferee.

SUBJECT MATTER OF SALE

1. The Transferor agrees to sell to the Transferee and the Transferee agrees to buy the following described business:

Pet Supply & Grooming

located at        45-10 Parsons Blvd., Flushing, NY 11355

Inventory/stock

including the stock in trade, fixtures, equipment, accounts receivable, contract rights, lease, good will, licenses, rights under any contract for telephone service or other rental, maintenance or use of equipment, machinery and fixtures at the said premises, more particularly described in Schedule A hereto attached, free and clear of any debts, mortgages, security interests or other liens or encumbrances except as herein stated. Title shall be closed on the        day of        at        M at the office of

closing date

PURCHASE PRICE TERMS OF PAYMENT

2. The purchase price to be paid by the Transferee is

210,000.00
$~~250,000.00~~

3. The terms of payment are as follows:
Upon execution of this agreement
By cash or certified check, receipt of which is hereby acknowledged

60,000.00
$~~100,000.00~~

Upon execution and delivery of Bill of Sale
By cash or certified check

$~~150,000.00~~

By execution and delivery of        promissory note        of the following tenor, to be secured by a security interest in the goods and chattels and all other personal property mentioned in Schedule A hereof and all other personal property, goods and chattels thereafter acquired used in connection with the aforesaid business; together with all proceeds thereof and all increases, substitutions, replacements, additions and accessions thereto.

$ 150,000.00

Transferee agrees to perfect such security interest by executing and delivering to Transferor a Security Agreement and a Financing Statement, in accordance with the provisions of the Uniform Commercial Code, and all other instruments or documents as may be required by the Transferor. The filing fees thereof shall be paid by the Transferee.

| | |
|---|---|
| rent | The rent during such term shall not exceed $ per month. |
| assumption | Transferee shall assume full performance of the existing lease, if assigned. |
| security | Security in the sum of $ now held by the landlord under the existing lease, is hereby added to the amount of the purchase price and is to be paid to the Transferor by the Transferee at the closing, less any valid set-off or counterclaim asserted by the landlord. Transferor shall also assign and transfer to the Transferee all of the Transferor's right, title and interest in said security. Any default on the part of the Transferor with respect to the provisions of this paragraph shall forthwith entitle the Transferee to repayment in full, on demand, of any deposit or payment on account hereunder. |
| LIQUIDATED DAMAGES | 12. Any willful, capricious or other inexcusable default hereunder on the part of either party shall entitle the aggrieved party to the sum of $ as liquidated damages for breach of this contract in addition to repayment in full of any sum paid hereunder as aforesaid, said amount being hereby agreed upon by reason of the difficulty in reducing the exact damages actually sustained to a mathematical certainty. |
| BROKER | 13. The parties agree that _None_ of No. |
| commission | is the only broker who brought about this sale. The Transferor shall pay to the Broker when and if title closes a commission at the rate of per cent of the purchase price. |
| WARRANTIES SURVIVE | 14. The warranties and covenants contained herein shall survive the Bill of Sale and become a part thereof and continue in full force as though set forth at length therein. |
| PRIOR NAMES AND ADDRESS | 15. Transferor represents that Transferor has not used any other business names and/or addresses within the three years last past except as follows:<br><br>　　　Mama's & Papa's |
| DEFINITION OF GOODS | 16. The term "goods" as defined and used in the Uniform Commercial Code shall apply to this agreement. |
| CAPTIONS | 17. The captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe scope of this agreement nor the intent of any provision thereof. |

    The terms, warranties and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors and assigns.

    The gender and number used in this agreement are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.

    This agreement may not be changed orally.

    IN WITNESS WHEREOF, the Parties have respectively signed and sealed these presents the day and year first above written.

                     **Seller**
                     JS Puppy Land, Inc.

                     By: Ji-Sun Lee, President

                     **Purchaser**

                     Yong Dae Park

_Broker_

                     Purchaser
                     SP Puppy Love, Inc.

                     By: Song Park, President

By taking title subject to and assuming payment of the sum of                     $

secured by a

now a lien affecting the business and assets or a portion thereof and paying

same according to the terms thereof.

**ADJUSTMENT**

4.  At the closing the following adjustments shall be made: rents, insurance premiums, taxes, electricity, gas, fuel, water, interest on mortgages or other liens.

**GUARANTY AS TO RECEIPTS**

5.  Transferor represents that the gross weekly receipts (for a week of          business days) of the business, for the past          weeks averaged the sum of $          per week, and hereby guarantees that the gross receipts for the period from          M.,          to          M:          will aggregate at least the sum of $

**TRIAL PERIOD**

6.  The aforesaid period shall be deemed the trial period during which full opportunity shall be afford the Transferee or representatives to keep tally of said gross receipts, and in the event the total of said gross receipts for said period is less than the guaranteed sum, the Transferee shall be repaid in full amount of deposit or payment on account hereunder, on demand.  The Transferee shall not be deemed to have taken possession during this trial period.

**CREDITORS LIST**

7.  Transferor shall furnish Transferee with a list of Transferor's existing creditors, containing the names and business addresses of all creditors of the Transferor, with the amounts owed to each and also the names of all persons who are known to the Transferor to assert claims against the Transferor even though such claims are disputed.  Such list shall be signed and sworn to or affirmed by the Transferor or his agent and, unless such list is appended hereto, it shall be delivered to Transferee at least 15 days before the closing date; provided that if Transferee takes possession of the goods or pays for them before that date such list shall be furnished at least 15 days before the happening of either event.

**PRESERVATI-ON OF LIST AND SCHEDUEL**

8.  Transferee shall preserve the list of creditors aforementioned as well as the schedule of property (Schedule A hereof) for a period of 6 months next following the date of transfer of title and shall permit inspection of either or both and copying therefrom at all reasonable hours by any creditor of the Transferor; in lieu thereof, Transferee may file such list and schedule in the Office of the Secretary (Department) of State.

**NOTICE TO CREDITORS**

9.  Transferee shall give notice to creditors of the transfer at least 10 days before taking possession of the goods or paying for them, whichever happens first.  Notice shall be given in the form and manner as provided in the Uniform Commercial Code.

**RESTRICTIVE COVENANT**

10.  The bill of sale shall contain a covenant by the Transferor and all other persons heretofore active in the said business or in any way interested therein with the Transferor, not to reestablish, re-open, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as employee, as owner, as partner, as agent, or as stockholder, director or officer of a corporation or otherwise, in any business, trade or occupation similar to the one hereby agreed to be sold, within the area bounded:

northerly by...............................................................................................................

southerly by...............................................................................................................

easterly by...*Ten* ( 10 .) miles in radius..................................................................

and westerly by..........................................................................................................

for a term of ..*Five*     ( 5 )............. Years from the closing date.

**LEASE**

**term**

11.  Transferor further agrees, at the time of closing, to assign and transfer as part of this sale the existing lease or to execute and deliver, or to procure the execution and delivery, to the Transferee of a new lease or an extension of the term of the existing lease, covering the premises used in connection with said business and providing for a continuous term which shall expire on the          day of

④

098

1-108/210

DATE 08/09/2006

PAY TO THE
ORDER OF    Js Puppy land    $ 20,000

Twenty Thousand only    DOLLARS

**HSBC**
HSBC Bank USA, N.A.

FOR

⑆02100108⑆:064960005⑈ 0098

---

097

1-108/210

Date 08/09/2006

Pay to the
Order of    Js Puppy Land    $ 40,000

Fourty Thousand Only    Dollars

**HSBC**
HSBC Bank USA, N.A.

For

⑆02100108⑆:064960005⑈ 0097

---

95

55-7272/212

Date 08/09/2006

PAY    Js Puppy Land Inc    $ 10,940
to the order of
Ten Thousand Nine Hundred Fourty    Dollars

**Washington Mutual**
Washington Mutual Bank, FA
Murray Hill-Northern Blvd Financial Ctr 7383
156-10 Northern Boulevard    1-800-788-7000
Flushing, NY 11354    24 hour Customer Service

Memo

⑆021272723⑆: 311010561⑈ 0095

---

099

1-108/210

Date 08/09/2006

Pay to
the order of    Js Puppy land    $ 1531.59

Fifteen Thirdty One    59/100    Dollar

**HSBC**
HSBC Bank USA, N.A.

For

⑆02100108⑆:064960005⑈ 0099

# EXHIBIT D

# Mortgage Table Calculator Results

The monthly payment for a mortgage of $150000.00 at 6.0000%
over 4 years is $3522.75.
The mortgage payments and remaining balances look like:

Year 1

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 150000.00 | 750.00 | 2772.75 | 750.00 |
| 2 | 147227.25 | 736.14 | 2786.62 | 1486.14 |
| 3 | 144440.63 | 722.20 | 2800.55 | 2208.34 |
| 4 | 141640.08 | 708.20 | 2814.55 | 2916.54 |
| 5 | 138825.52 | 694.13 | 2828.63 | 3610.67 |
| 6 | 135996.90 | 679.98 | 2842.77 | 4290.65 |
| 7 | 133154.13 | 665.77 | 2856.98 | 4956.42 |
| 8 | 130297.14 | 651.49 | 2871.27 | 5607.91 |
| 9 | 127425.87 | 637.13 | 2885.62 | 6245.04 |
| 10 | 124540.25 | 622.70 | 2900.05 | 6867.74 |
| 11 | 121640.20 | 608.20 | 2914.55 | 7475.94 |
| 12 | 118725.64 | 593.63 | 2929.13 | 8069.57 |

Year 2

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 115796.52 | 578.98 | 2943.77 | 8648.55 |
| 2 | 112852.74 | 564.26 | 2958.49 | 9212.81 |
| 3 | 109894.25 | 549.47 | 2973.28 | 9762.29 |
| 4 | 106920.97 | 534.60 | 2988.15 | 10296.89 |
| 5 | 103932.82 | 519.66 | 3003.09 | 10816.55 |
| 6 | 100929.73 | 504.65 | 3018.11 | 11321.20 |
| 7 | 97911.62 | 489.56 | 3033.20 | 11810.76 |
| 8 | 94878.43 | 474.39 | 3048.36 | 12285.15 |
| 9 | 91830.07 | 459.15 | 3063.60 | 12744.30 |
| 10 | 88766.46 | 443.83 | 3078.92 | 13188.14 |
| 11 | 85687.54 | 428.44 | 3094.32 | 13616.57 |
| 12 | 82593.22 | 412.97 | 3109.79 | 14029.54 |

Year 3

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 79483.44 | 397.42 | 3125.34 | 14426.96 |
| 2 | 76358.10 | 381.79 | 3140.96 | 14808.75 |
| 3 | 73217.13 | 366.09 | 3156.67 | 15174.83 |
| 4 | 70060.47 | 350.30 | 3172.45 | 15525.14 |
| 5 | 66888.01 | 334.44 | 3188.31 | 15859.58 |
| 6 | 63699.70 | 318.50 | 3204.26 | 16178.07 |
| 7 | 60495.44 | 302.48 | 3220.28 | 16480.55 |
| 8 | 57275.17 | 286.38 | 3236.38 | 16766.93 |
| 9 | 54038.79 | 270.19 | 3252.56 | 17037.12 |
| 10 | 50786.23 | 253.93 | 3268.82 | 17291.05 |
| 11 | 47517.40 | 237.59 | 3285.17 | 17528.64 |
| 12 | 44232.24 | 221.16 | 3301.59 | 17749.80 |

Year 4

| Month | Balance | Interest | Principal | Cumulative Interest |
|---|---|---|---|---|
| 1 | 40930.64 | 204.65 | 3318.10 | 17954.45 |
| 2 | 37612.54 | 188.06 | 3334.69 | 18142.52 |
| 3 | 34277.85 | 171.39 | 3351.37 | 18313.91 |
| 4 | 30926.49 | 154.63 | 3368.12 | 18468.54 |
| 5 | 27558.36 | 137.79 | 3384.96 | 18606.33 |
| 6 | 24173.40 | 120.87 | 3401.89 | 18727.20 |
| 7 | 20771.51 | 103.86 | 3418.90 | 18831.05 |
| 8 | 17352.62 | 86.76 | 3435.99 | 18917.82 |
| 9 | 13916.63 | 69.58 | 3453.17 | 18987.40 |
| 10 | 10463.45 | 52.32 | 3470.44 | 19039.72 |
| 11 | 6993.02 | 34.97 | 3487.79 | 19074.68 |
| 12 | 3505.23 | 17.53 | 3505.23 | 19092.21 |

Total interest paid: $ 19092.21

# EXHIBIT E

HEARING DATE: July 14, 2011
HEARING TIME: 2:00 p.m.

------------------------------------------------------------x

IN RE

SONG PARK

Debtor.

------------------------------------------------------------x

: **AFFIRMATION OF NARESH M.**
: **GEHI**
:
: **Chapter 7 Case No.**
:
: **1-11-40745-cec**
:
:
:
:
:

TO: THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

I am attorney duly admitted to practice before all the Courts of the State of New York,

Connecticut, and the Federal District Court and Bankruptcy Courts in the Southern and Eastern

Districts of New York, and affirm under penalty of perjury the following to be true based on my

information and belief:

1.      Your Honor, I have been a lawyer since 1993. Aside from Trustee Geltzer, no one has

        ever treated me, my clients, and my staff with such disrespect. Trustee Geltzer has

        blatantly disregarded the "basic rules of ethics in the profession" by openly using words

        such as "stupid" against me on the record and in front of numerous individuals in the

        court room. Additionally, he has made references to "my website," which has no

        connection with the facts and circumstances of this case. He has threatened my firm with

        sanctions, told my clients to seek a full refund of legal fees, and has sought to tarnish my

        reputation before my clients. He has thrown files at my associate with complete

        disregard to the Disciplinary rules.

2.     Assuming arguendo that my statements are incorrect, I beg your honor to carefully listen to the two original tapes of the two § 341 meeting with the creditors and your honor will clearly understand the severe, debilitating, extreme, and outrageous conduct, which Trustee Geltzer has directed against me, my clients, and my associate Monica Ahmad.

3.     My clients are petrified of appearing before Trustee Geltzer because of their past experiences with him. It is also impossible for me to work with Trustee Geltzer who has a problem with my accent. I have never had a problem dealing with attorneys and judges in connection with my accent. I respectfully urge your Honor to direct Trustee Geltzer not to treat any human being in the manner in which he has treated my clients, my staff, and me in this matter.

Respectfully submitted,

Dated July 11, 2011          By: /s/_____

                     LAW OFFICES OF N.M GEHI, P.C.
                     Naresh M. Gehi, Esq.
                     118-21 Queens Blvd., Suite 411
                     Forest Hills, N.Y. 11375
                     Telephone: 718-263-5999